## Wright v. Louisville & Nashville R. Company, Inc., et al.

(Decided June 9, 1931.)

C. E. EVANS and E. S. BRADSHAW for appellant.

JOHN S. MILLIKEN and E. P. HATTER for appellee City of Franklin.

RODES & HARLIN, C. B. MOORE, ASHBY M. WARREN for appellee Louisville & N. R. Co.

Opinion of the Court by Judge Clay—Affirming.

In this action by George D. Wright against the Louisville & Nashville Railroad Company and the city of Franklin, the trial court, at the conclusion of the evidence for plaintiff, directed a verdict in favor of the defendants. Plaintiff appeals.

The facts are these: Cedar street in the city of Franklin runs east and west, and crosses the Louisville & Nashville Railroad right of way practically at right angles. The property north of Cedar street and on the west side of the right of way is owned by the railroad. Next to the right of way is the passenger depot, which extends to Cedar street. West of the passenger depot is a small park, which abuts on Cedar street. Between the depot and the park is a driveway leading from Depot street on the north, and intersecting with Cedar street on the south. At the intersection and on the north side of Cedar street is a sidewalk or crossing composed of stone slabs from one and one-half to two feet wide, and stretching from the park on the west to the depot platform, a distance of about 30 feet. On the morning of November 17, 1926, appellant, who was riding horseback, went to a blacksmith's shop on Depot street. Later he rode up Depot street and turned south over the driveway leading into Cedar street. On reaching the crossing his horse's foot slipped on one of the slabs and appellant was thrown on the concrete platform and severely injured. According to appellant and other witnesses the slabs were very slick and very slanting, one of the witnesses saying that, according to his remembrance, the slant from east to west was something near 15 inches in a distance of about 30 feet. There was further evidence that the driveway from Depot street to Cedar street was maintained by the railroad company, but no evidence that it constructed or maintained the crossing or sidewalk on the north side of Cedar street. There was also evidence to the effect that the driveway or street on the railroad property was used generally by the traveling public, and that the crossing or sidewalk was maintained by the city.

(1) It does not satisfactorily appear that the railroad owns the ground on which the crossing is located, or that it ever undertook the duty of maintaining the crossing. On the contrary it appears that the crossing is a part of Cedar street, and was maintained by the city. In

the circumstances the railroad is a mere abutting property owner, and there being no evidence that the alleged defective condition was due to any act of negligence on its part, it is not responsible for injuries growing out of such defect. Webster v. Chesapeake & O. R. Co., 105 S. W. 945, 32 Ky. Law Rep. 404. It follows that the peremptory instruction to find for the railroad company was proper.

(2) In Webster v. City of Vanceburg, 130 Ky. 320, 113 S. W. 140, 19 L. R. A. (N. S.) 752 132 Am. St. Rep. 392, the facts were these: The freight depot of the railroad company was situated on the main street in Vanceburg. Along side of the depot was a pavement. Plaintiff, who was a drayman, had driven his dray loaded with hay upon the pavement. In driving off the pavement the wheels dropped off one before the other on the pavement curbing, which was a foot or more lower at that point than the sidewalk. Plaintiff was thrown to the ground and sustained a serious injury. The trial court gave a peremptory instruction to find for the city. In approving its action we laid down the rule that a city's sidewalks are intended solely for the use of pedestrians, and while they must be kept in reasonably safe repair for such use, the city is not bound to keep them fit for the use of vehicles also, and if drivers used them for passage of wagons, they do so at their peril. It was further held that the fact that the sidewalks had been used for vehicles for many years with the acquiescence of the city would not render the city liable for injuries to drivers because the sidewalks were not fit for vehicles. Appellant insists that that case is clearly distinguishable from the case at bar in that the crossing, though originally constructed as a sidewalk, lies at the intersection of two streets used generally by the traveling public, and thus has become a part of Cedar street proper, with the consequent duty on the part of the city to use ordinary care to maintain it in a reasonably safe condition for all kinds of travel. Whether this position is sound, we need not determine. It is sufficient to say that the evidence does not make out a case of negligence. The city is not under an absolute duty to make its streets safe. In every city there are numerous streets more or less slanting, and more or less slick. Some are built of cobble stones, which become smooth from use, while others are built of concrete of rounded surface. Indeed it is practically impossible to

build streets in such a way that a horse's foot will not slip thereon. It is not claimed that the accident was due to any obstruction, or to any substantial hole in the crossing. All that is claimed is that the crossing or sidewalk was unsafe because it was slippery and slanting. Even if the case were one where the city was under the duty to use ordinary care to maintain the crossing in a reasonably safe condition for travel by horses, we conclude that the evidence was not sufficient to take the case to the jury.

Judgment affirmed.